## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BANK OF AMERICA, NATIONAL ASSOCIATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| FEDERAL DEPOSIT INSURANCE CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## COMPLAINT

Plaintiff Bank of America, National Association ("Bank of America") for its complaint against Defendant Federal Deposit Insurance Corporation ("FDIC") alleges, by and through its attorneys, on knowledge as to Bank of America, and on information and belief as to all other matters, as follows:

### Introduction

1.      This is an action brought pursuant to the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("APA"), arising from a series of unlawful, arbitrary, and capricious actions by the FDIC in connection with the receivership of Colonial Bank ("Colonial"), for which the FDIC acts as Receiver.  Specifically, the FDIC:  (1) violated the APA and the Federal Deposit Insurance Act, 12 U.S.C. § 1811 *et seq.* ("FDIA"), as amended by the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), by announcing, in a publication dated April 19, 2013, without statutory authority or any semblance of public notice or an opportunity to be heard, its own purported unilateral determination that all unsecured claims against Colonial have "no value" (the "Colonial 'no value' determination") because, according to the FDIC, there

is no possibility that sufficient assets will be recovered to pay Colonial's administrative and deposit liabilities—despite numerous pending collection efforts by the FDIC that potentially could exceed the stated value of Colonial's administrative and deposit liabilities as identified by the FDIC; and (2) violated the APA, the FDIA, and FIRREA by deciding to issue "no value" determinations of the sort at issue here, with the intended effect of altering the rights of claimants against the FDIC as Receiver for entities in receivership, without first complying with the requirements of Section 553 of the APA, including the requirement that an agency issue a public notice and provide an opportunity for affected parties and members of the public to comment on the proposed agency decision.

2.      The FDIC also has acted unlawfully in attempting to use its unauthorized and self-appointed power to issue "no value" determinations as a means of defeating claims filed against it in court pursuant to the judicial review provision of FIRREA.  The FDIC has argued that, once it issues a "no value" determination, the court in which an unsecured claim against the FDIC is pending (1) must immediately dismiss such claims, and (2) has no power to question the FDIC's determination, or even to allow discovery into the basis for the determination.  There is no authority in any of the FDIC's governing statutes for this assertion of unreviewable power to deem claims against itself to be unrecoverable.  On the contrary, the FDIC's claim to such power is contrary to both the express terms, and the clear implications, of FIRREA, which provides that any party aggrieved by the FDIC's disallowance of a claim is entitled to de novo judicial review of that claim.

3.      Bank of America is aggrieved by the FDIC's unlawful actions as set forth herein because the FDIC has attempted to use its decision to issue unlawful "no value" determinations generally—and the Colonial "no value" determination in particular—to seek dismissal of Bank of America's pending claims validly filed pursuant to FIRREA against the FDIC as Receiver for Colonial.  Colonial was a central wrongdoer in a criminally fraudulent scheme through which billions of dollars were stolen from major financial institutions, resulting in convictions of key Colonial executives.  Bank of America, which was one of the chief victims of Colonial's

fraudulent scheme, submitted a claim in the Colonial receivership.  In 2010, after the FDIC disallowed that claim, Bank of America exercised its statutory right under FIRREA to obtain judicial review of its claim in an Article III court by filing a de novo action against the FDIC in the U.S. District Court for the District of Columbia.  *See Bank of America, N.A. v. Federal Deposit Insurance Corp.*, No. 10-CV-1681 (BJR) (D.D.C. filed Oct. 1, 2010) ("2010 Action").

4.      The 2010 Action had been pending for over two and a half years when the FDIC issued the Colonial "no value" determination.  Shortly thereafter, the FDIC filed a motion to dismiss Bank of America's claims in the 2010 Action on the ground that the Colonial "no value" determination had established as an "adjudicative fact" that claims against the Colonial receivership have "no value."  The FDIC argued in its motion that its own unilateral Colonial "no value" determination is binding on the Court in the 2010 Action and requires dismissal of all unsecured claims filed by Bank of America in that action.  The FDIC has contended that the Colonial "no value" determination may not be challenged in any way in the 2010 Action itself, including through discovery, but rather may be challenged only through an action under the APA.  Without conceding the merit of the FDIC's position, Bank of America has brought this action to challenge the FDIC's Colonial "no value" determination, as well as the FDIC's decision to issue such determinations generally.

5.      The FDIC's Colonial "no value" determination, and its decision to issue "no value" determinations generally, should be declared unlawful and set aside for at least the following reasons:

(a)      The FDIC has no statutory authority to make "no value" determinations.  To the contrary, Bank of America has a statutory right under FIRREA to de novo judicial review of the FDIC's disallowance of its claims.  *See* 12 U.S.C. § 1821(d)(6). The FDIC's assertion of discretion to deem such claims unrecoverable and then demand dismissal of those claims is contrary to the express statutory right to judicial review provided by FIRREA because it would substitute the FDIC's judgment for that of an Article III court as to the validity of a particular claim.

3

(b)     The FDIC's Colonial "no value" determination is arbitrary and capricious because it is factually flawed and premature.  Publicly available information shows that the FDIC's calculation of Colonial's assets may have omitted assets that the FDIC currently is attempting to recover and that therefore could become available to satisfy claims against the Colonial receivership.  Further, because the FDIC's asset recovery efforts for the Colonial receivership are ongoing and the governing statutes of limitations have not expired, the FDIC has no basis now to delimit, for all time, the assets that may become available.

(c)     The FDIC violated the APA, as well as fundamental rules of due process, by failing to follow the Section 553 notice and comment process or otherwise provide an opportunity for interested or affected parties to be informed of, and comment on, the agency's analysis before making its Colonial "no value" determination.  The Colonial "no value" determination is "an agency statement of … particular applicability and future effect designed to implement … law or policy," or is otherwise "a final disposition," within the meaning of the APA.  Further, the FDIC's Colonial "no value" determination was issued for the purpose of affecting the rights of creditors of Colonial such as Bank of America, and defeating the valid claims of such creditors.  The FDIC was required to provide notice to the public and an opportunity to submit comments before adopting its Colonial "no value" determination.

(d)     The FDIC violated Section 553 of the APA by deciding to issue "no value" determinations generally, as a purported exercise of its statutory powers, without first providing public notice and an opportunity for comment.  The FDIC's decision to issue "no value" determinations with respect to pending receiverships is "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency."  Further, the

FDIC's decision to issue "no value" determinations has the purpose and effect of affecting the rights of claimants with rights of judicial review in pending receiverships.

6.     In addition, an injunction should issue barring the FDIC from using the Colonial "no value" determination to avoid the statutory requirement of judicial review of its disallowance of Bank of America's claims, and the FDIC should be enjoined from issuing further such determinations until it employs the proper notice and comment procedures set out in Section 553 of the APA.

## The Parties

7.     Bank of America is a national banking association with its principal place of business in Charlotte, North Carolina.

8.     The FDIC is the federal agency charged by law with, among other duties, administering the FDIA, as amended by FIRREA, and the federal bank deposit insurance system. In its capacity as Receiver, the FDIC was appointed to administer the receivership estate of Colonial.

## Jurisdiction

9.     This action arises under the laws of the United States including the FDIA, FIRREA, and the APA.

10.     This Court has jurisdiction over the subject matter pursuant to 5 U.S.C. § 702, 12 U.S.C. § 1819(b)(2)(A), and 28 U.S.C. §§ 1331 and 1337.

11.     Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(e).

## Facts Common to All Causes of Action

12.     On August 14, 2009, the Alabama State Banking Department appointed the FDIC as Receiver of Colonial.

13.     On November 19, 2009, Bank of America filed a proof of claim with the FDIC as Receiver for Colonial.  A true and correct copy of Bank of America's proof of claim is attached as Exhibit A.

14.     Bank of America's proof of claim sought allowance of the following categories of claims against Colonial:  (1) "Trust or Preferred Claims," (2) "Secured Claims," (3) "Deposit Liability, Guaranty and Insurance Claims," (4) "Stolen Property and Other Priority Claims," (5) "Senior Unsecured Claims," and (6) general unsecured claims.

15.     Bank of America's claims sought approximately $1.75 billion from the Colonial receivership estate.

16.     Pursuant to 12 U.S.C. § 1821(d)(5)(A)(v), the FDIC as Receiver was required to give Bank of America notice of disallowance of its claims and to include in that notice "a statement of each reason for the disallowance" and "the procedures available for obtaining agency review of the determination to disallow the claim or judicial determination of the claim."

17.     In a letter dated August 4, 2010, the FDIC notified Bank of America that Bank of America's claims against the Colonial receivership had been disallowed.  A true and correct copy of the FDIC's notice of disallowance is attached as Exhibit B.

18.     The FDIC's notice of disallowance stated that Bank of America's claims were disallowed because "[t]he claim has not been proven to the satisfaction of the Receiver."  The FDIC's notice of disallowance provided no further explanation of the FDIC's decision.

19.     FIRREA provides a right of de novo judicial review of the FDIC's disallowance of a claim.  A claimant may "file suit on such claim … in the district or territorial court for the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim)."  12 U.S.C. § 1821(d)(6)(A).

20.     The FDIC's notice of disallowance advised Bank of America to file a lawsuit if it disagreed with the disallowance of its claims.

21.     On October 1, 2010, Bank of America filed the 2010 Action against the FDIC as Receiver for Colonial to obtain de novo judicial review of its claims against the Colonial receivership.

22.     On April 11, 2011, Bank of America filed its First Amended Complaint in the 2010 Action.

23.     On August 5, 2011, the FDIC filed counterclaims against Bank of America in the 2010 Action seeking nearly $900 million in damages.

24.     On December 10, 2012, the U.S. District Court for the District of Columbia held, among other things, that Bank of America's First Amended Complaint pleads viable claims against the FDIC, as Receiver for Colonial, for fraud and fraudulent transfer.

25.     On April 19, 2013, the FDIC published a Notice in the *Federal Register* entitled "Determination of Insufficient Assets to Satisfy Claims Against Financial Institution" ("Notice").  *See* 78 Fed. Reg. 76, 23565.  A true and correct copy of the Notice is attached as Exhibit C.

26.     The "Summary" section of the Notice states:  "The FDIC has determined that insufficient assets exist in the receivership of Colonial Bank, Montgomery, Alabama, to make any distribution on general unsecured claims, and therefore such claims will recover nothing and have no value."

27.     The Notice states that the FDIC made the Colonial "no value" determination on April 15, 2013.

28.     The "Supplementary Information" section of the Notice states, in relevant part: "As of March 31, 2013, the maximum value of assets that could be available for distribution by the Receiver, together with maximum possible recoveries on professional liability claims against directors, officers, and other professionals, as well as potential tax refunds, was $3,282,813,040. As of the same date, administrative expenses and depositor liabilities equaled $4,981,236,544, exceeding available assets and potential recoveries by $1,698,423,504.  Accordingly, the FDIC has determined that insufficient assets exist to make any distribution on general unsecured creditor claims (and any lower priority claims) and therefore all such claims, asserted or unasserted, will recover nothing and have no value."

29.     The Notice provided no other data or reasoning to support its conclusion, nor was it preceded by any notice to the public or any interested or potentially aggrieved party, or by any opportunity for the public or any interested or potentially aggrieved party to submit evidence or otherwise comment upon the Colonial "no value" determination.

30.     The Colonial "no value" determination and the Notice are not in accordance with law, and are in excess of the FDIC's statutory jurisdiction, authority, limitations, or short of statutory right, because the FDIC lacks statutory authority to make an administrative determination purporting to establish as a binding fact that claims against itself in a separate judicial proceeding have no value and must be dismissed.

31.     The statutory provision cited by the FDIC in the Notice does not grant or even imply the power to issue such a "no value" determination.  That provision, 12 U.S.C. § 1821(d)(2)(b)(iv), authorizes the FDIC as Receiver to "preserve and conserve the assets and property of [an] institution" for which the FDIC is appointed Receiver.  It does not authorize the FDIC to issue a "no value" determination, much less rely upon such a determination to insist that claims validly filed in federal court pursuant to FIRREA be dismissed at its whim.

32.     The Colonial "no value" determination and the Notice are not in accordance with law, and are in excess of the FDIC's statutory jurisdiction, authority, limitations, or short of statutory right, because they contravene FIRREA's express grant to claimants such as Bank of America of a right to de novo judicial review.  *See* 12 U.S.C. § 1821(d)(6).  That statute ensures that a party whose claims are disallowed by the FDIC may have the claims reviewed by an independent Article III court.  The FDIC's effort to evade this right of judicial review by issuing unilateral, purportedly unreviewable "no value" determinations is contrary to FIRREA.  Indeed, the right of judicial review would have no meaning if the FDIC were entitled, on its own volition, to terminate judicial review of claims that it has disallowed.

33.     The Colonial "no value" determination, as published in the Notice, also is substantively incorrect.  The FDIC's calculation of $3,282,813,040 as the "maximum value of assets that could be available for distribution by the Receiver, together with maximum possible

recoveries on professional liability claims against directors, officers, and other professionals, as well as potential tax refunds," disregards the FDIC's own requests for punitive damages, interest, and attorney's fees in various pending actions brought by the FDIC as receiver for Colonial.  The FDIC's calculation also may disregard other potential sources of asset recovery, including the FDIC's own counterclaims seeking $900 million from Bank of America in the 2010 Action and the claims totaling $2.5 billion that it asserted in the bankruptcy proceeding for Taylor, Bean & Whitaker Mortgage Corporation.  The FDIC is seeking unspecified compensatory damages exceeding $1 billion in one action against Colonial's former auditors alone.

34.     The FDIC's Colonial "no value" determination and Notice stating that it calculated the "maximum value of assets" and "maximum possible recoveries" are arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law, because they lack any factual basis and because the FDIC has asserted rights to recover damages exceeding what it announced as the "maximum value of assets" and "maximum possible recoveries."

35.     The FDIC's Colonial "no value" determination and Notice stating that it calculated the "maximum value of assets" and "maximum possible recoveries" are arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law, for the additional reason that they are premature.  Because the FDIC is continuing to attempt to recover assets for Colonial, and because statutes of limitations governing claims that the FDIC might yet file have not expired, the FDIC cannot determine now that there is no possibility of additional future recoveries.

36.     On May 3, 2013, the FDIC filed a motion in the 2010 Action to dismiss Bank of America's First Amended Complaint.  That motion remains pending.  In its motion, the FDIC asserts that Bank of America's First Amended Complaint should be dismissed because "[t]he FDIC's No Value Determination conclusively establishes that there are no assets in the Colonial Bank receivership estate to make any payments on general creditor claims, including [Bank of America's], and that such claims therefore have no value."

37.     The Colonial "no value" determination and Notice are essential elements of the FDIC's motion to dismiss Bank of America's First Amended Complaint in the 2010 Action.

38.     The FDIC has taken the position that its Notice and Colonial "no value" determination constitute an "adjudicative fact" that cannot be challenged or subjected to discovery in the 2010 Action.

39.     The FDIC intended its Notice and Colonial "no value" determination to be binding on the general public, as shown by its assertion in the 2010 Action that "[t]he FDIC's No Value Determination conclusively establishes that there are no assets in the Colonial Bank receivership estate to make any payments on general creditor claims, including [Bank of America's], and that such claims therefore have no value."

40.     Despite deeming the Colonial "no value" determination an "adjudicative fact," the FDIC provided no notice to the public or interested or potentially aggrieved parties, and no opportunity for comment, submission of evidence, or hearing of any kind.

41.     The FDIC also provided no notice to the public or interested or potentially aggrieved parties, or any opportunity for comment, submission of evidence, or hearing of any kind, before deciding to issue "no value" determinations generally and assert that they are binding upon the courts.

42.     Bank of America is aggrieved by the FDIC's Colonial "no value" determination and Notice, and by its decision to make such determinations, because the FDIC is actively seeking to use the Colonial "no value" determination and Notice to defeat Bank of America's property rights and statutory right to judicial review of its claims against the Colonial receivership.

43.     Bank of America is entitled to have the Colonial "no value" determination and Notice declared unlawful and set aside.

44.     In addition, the FDIC should be enjoined from relying on the Colonial "no value" determination and Notice in connection with the administrative claims process, the judicial review process, or any other legal proceeding, and from continuing to make or rely upon any

such determinations without first complying with the requirements of the APA.  If the FDIC is not so enjoined, Bank of America will be irreparably harmed because the FDIC's use of the Colonial "no value" determination and Notice to defeat Bank of America's claims will effectively foreclose judicial review of those claims.  Bank of America has no adequate remedy at law because the FDIC contends that the court in the 2010 Action must give effect to the Colonial "no value" determination and Notice without any inquiry into their validity.

45.     The FDIC has denied Bank of America any ability to test the FDIC's conclusions concerning the assets available to the Colonial receivership.  Both as a defendant seeking to dismiss the 2010 Action, and as an agency responding to a request made by counsel for Bank of America pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), the FDIC has wrongfully refused to provide any records to explain its Colonial "no value" determination.

46.     After the FDIC asserted that the Colonial "no value" determination and Notice require dismissal of Bank of America's claims in the 2010 Action, Hunton & Williams LLP, co-counsel for Bank of America, requested that the FDIC produce documents relating to that determination, including an accounting of the receivership and other reports made pursuant to 12 U.S.C. § 1821(d)(15).  The FDIC responded that "such materials are not available and not discoverable."

47.     By letter dated May 13, 2013, Hunton & Williams LLP, on behalf of Bank of America, submitted a FOIA request to the FDIC for 14 categories of documents, including the "Administrative Record for the Determination" and "[a]ll factual records underlying the Determination."  By letter dated May 24, 2013, the FDIC denied the vast majority of the FOIA request and withheld records responsive to 12 of the 14 categories of requested documents, including the "Administrative Record for the Determination" and "[a]ll factual records underlying the Determination."

48.     By letter dated June 4, 2013, Hunton & Williams LLP, on behalf of Bank of America, appealed the FDIC's denial of the vast majority of the FOIA request.  By letter dated July 3, 2013, the FDIC denied that appeal and acknowledged that it was withholding responsive

records including, among other things, "a detailed financial analysis of the Receivership assets, balance sheet adjustments, and potential recoveries, as well as an account of the Receivership's liabilities, claims against the Receivership, and financial statements."

49.     Although the FDIC suggested in its July 3, 2013 letter that Bank of America "may seek in discovery relevant and necessary records under the Federal Rules of Civil Procedure," the FDIC has stated repeatedly in the 2010 Action that records underlying the Colonial "no value" determination and Notice are not subject to civil discovery.

### First Claim for Relief

**(Administrative Procedure Act—Unauthorized, Arbitrary, and Capricious Agency Action)**

50.     Bank of America incorporates by reference the allegations of the preceding paragraphs.

51.     The Colonial "no value" determination and Notice each constitutes a final agency action pursuant to 5 U.S.C. § 704.

52.     Bank of America has suffered a legal wrong, or has otherwise been affected or aggrieved by the FDIC's Colonial "no value" determination and Notice, as specified above.

53.     The FDIC's Colonial "no value" determination and Notice were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of the FDIC's statutory jurisdiction, authority, or limitations, or short of statutory right; without observance of procedure required by law; unsupported by substantial evidence; and unwarranted by the facts, for the reasons specified above.

54.     Bank of America is entitled to relief pursuant to 5 U.S.C. §§ 702 and 706(2).

### Second Claim for Relief

**(Administrative Procedure Act—Failure to Provide Interested Persons Sufficient Opportunity to Participate in the Process for Making and Issuing the Colonial "No Value" Determination and Notice)**

55.     Bank of America incorporates by reference the allegations of the preceding paragraphs.

56.     The Colonial "no value" determination and Notice each constitutes a rulemaking or adjudication subject to the APA.

57.     Before promulgating the Colonial "no value" determination and Notice, the FDIC was required to give interested persons an opportunity to participate in the FDIC's decision-making process through submission of written data, views, or arguments.

58.     The FDIC failed to give the public any notice of or opportunity to participate in that decision-making process.

59.     Bank of America has suffered a legal wrong, or has otherwise been affected or aggrieved by the FDIC's promulgation of the Colonial "no value" determination and Notice, as specified above.

60.     Bank of America is entitled to relief pursuant to 5 U.S.C. §§ 702 and 706(2).

## Third Claim for Relief

**(Administrative Procedure Act—Failure to Provide Interested Persons Sufficient
Opportunity to Participate in the Process for Deciding to Issue Purportedly Binding
"No Value" Determinations)**

61.     Bank of America incorporates by reference the allegations of the preceding paragraphs.

62.     The FDIC's general decision to issue "no value" determinations and assert that those determinations bind courts adjudicating claims against the FDIC's receivership estates constitutes a rulemaking pursuant to 5 U.S.C. § 553 and a final agency action pursuant to 5 U.S.C. § 704.

63.     Before deciding to issue "no value" determinations and assert that those determinations bind courts adjudicating claims against the FDIC's receivership estates, the FDIC was required to give interested persons an opportunity to participate in the rulemaking through submission of written data, views, or arguments.

64.     The FDIC failed to give the public any notice of or opportunity to participate in that rulemaking.

65.     Bank of America has suffered a legal wrong, or has otherwise been affected or aggrieved by the FDIC's decision to issue "no value" determinations and assert that those determinations bind courts adjudicating claims against the FDIC's receivership estates, because the FDIC has relied on the Colonial "no value" determination and Notice made pursuant to that decision to attempt to prevent Bank of America from exercising its statutory right to de novo judicial review of the FDIC's disallowance of Bank of America's claims against the Colonial receivership.

66.     Bank of America is entitled to relief pursuant to 5 U.S.C. §§ 702 and 706(2).

### Prayer for Relief

WHEREFORE, Bank of America demands an order and judgment against the FDIC:

(a)     declaring unlawful, setting aside, and enjoining the FDIC and its officers, agents, and employees from relying upon the Colonial "no value" determination and Notice in any legal proceeding;

(b)     declaring unlawful, setting aside, and enjoining the FDIC and its officers, agents, and employees from implementing or applying its decision to issue "no value" determinations generally and assert that those determinations bind courts adjudicating claims against the FDIC's receivership estates;

(c)     awarding Bank of America attorney's fees and costs as may be permitted by law; and

(d)     granting such other relief as the Court may deem just and proper.

14

Dated:  July 22, 2013

MUNGER TOLLES & OLSON LLP

By: /s/ Kristin Linsley Myles
Marc T.G. Dworsky (*to be admitted pro hac vice*)
Kristin L. Myles (*to be admitted pro hac vice*)
Gregory D. Phillips (*to be admitted pro hac vice*)
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Tel.:  213-683-9100
Fax:  213-687-3702
marc.dworsky@mto.com
kristin.myles@mto.com
gregory.phillips@mto.com

-and-

By: /s/ Jonathan H. Lasken
Jonathan H. Lasken (Bar No. 997251)
HUNTON & WILLIAMS LLP
2200 Pennsylvania Avenue, N.W.
Washington, DC 20037
Tel.:  202-995-1500
Fax:  202-778-22001
jlasken@hunton.com

Frank E. Emory, Jr. (Bar No. 975713)
Patrick L. Robson (*to be admitted pro hac vice*)
HUNTON & WILLIAMS LLP
101 South Tryon Street
Charlotte, NC 28280
Tel.:  704-378-4700
Fax:  704-378-4890
femory@hunton.com
probson@hunton.com

*Attorneys for Bank of America,*
*National Association*